IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | * |
| RONALD WALCK (deceased) and | * CHAPTER 7 |
| SHARON MARIE WALCK, | * |
|     Debtors | * |
| | * CASE NO. 1:09-bk-04455MDF |
| CHARLES A. BIERBACH, | * |
| Chapter 7 Trustee, | * |
|     Objectant | * |
| | * |
|     v. | * |
| | * |
| SHARON MARIE WALCK, | * |
|     Respondent | * |

## OPINION

Before me is the Objection of Charles A. Bierbach ( the "Trustee") to the Amended Schedule of Exemptions filed by Sharon Marie Walck ("Walck") in the above captioned bankruptcy case. For the reasons that follow, the Objection will be overruled.

### I. Procedural and Factual History

Walck and her late husband, Ronald (collectively, "Debtors"), filed a voluntary Chapter 7 petition on June 10, 2009. Ronald Walck died six days thereafter. A meeting of creditors under 11 U.S.C. § 341 was conducted on August 28, 2009 at which Walck testified that she was entitled to receive a $100,000 life insurance benefit on her husband's life. The Trustee advised her that the proceeds of the insurance policy must be paid to the Chapter 7 estate subject to any appropriate exemptions. On or about September 25, 2009, Walck paid $80,000 to the Trustee, which exceeded the total claims of $58,824.53 listed in Walck's schedules.

On September 1, 2009, a notice was sent to all creditors announcing that the case had been changed from a no-asset to an asset case and that December 2, 2009 was the bar date for

filing proofs of claim. Eleven claims were filed before the bar date. On January 7, 2010, the Trustee submitted a final report on the administration of the estate to the Office of the United States Trustee ("UST") for review prior to filing the report with the Court.[1]

On February 25, 2010, Walck filed an Amended Schedule B listing the life insurance proceeds as an asset held jointly by Debtors. She also filed an Amended Schedule C seeking to exempt those proceeds pursuant to 11 U.S.C. § 522 (d)(11)(C).

If Walck's amended exemption claim were allowed, all available assets for administration would be exempt. Nevertheless, on March 1, 2010, the UST proceeded with the review process and filed the Trustee's report along with its Statement of Review indicating that it had no objection to the report. The filing of the UST's Statement of Review automatically triggered the issuance of a Notice of Trustee's Final Report ("TFR Notice") by the Clerk, which was sent to all creditors in the case on March 4, 2010. The TFR Notice indicated that each claimant would receive full payment of its claim, with a surplus of $8161.76 to be returned to Walck after payment of the Trustee's commission of $6842.39. No objections were filed to the report by any party, including Walck, although the proposed distribution was in conflict with Walck's amended exemption claim.

---

[1]Under the terms of a Memorandum of Understanding between the Executive Office for United States Trustees and the Administrative Office of the U.S. Courts, a Chapter 7 trustee submits a Final Report to the UST for review. After the report is reviewed and all deficiencies are resolved, which must occur within sixty days, the UST files the report with the Clerk. After the Final Report is filed with the Clerk, notice to creditors is sent by the trustee or such other person as the court directs or the Clerk. *Amended Memorandum of Understanding Between the Executive Office for United States Trustees and the Administrative Office of the United States Courts Regarding Case Closing and Post Confirmation Chapter 11 Monitoring*, April 1,1999, available at http:/www.justice.gov/ust/eo/rules_regulations/mou99. In the Middle District of Pennsylvania, notice of the filing of the Final Report is issued by the Clerk.

On March 9, 2010, the Trustee objected to Walck's Amended Schedule C. The Objection asserted that the amendment was untimely because Walck was aware of the insurance proceeds and delayed her claim until after notice had been provided to creditors that assets were available for distribution. The Trustee further argued that even if the amendment were timely, the funds were not reasonably necessary for her support as required by § 522(d)(11)(C). On March 25, 2010, Walck filed an Answer to the Trustee's Objection. A hearing was held on May 24, 2010, and the matter is ready for decision.[2]

## II. Discussion

"Bankruptcy exemptions should be interpreted liberally in favor of debtors." *In re Collins*, 281 B.R. 580, 582 (Bankr. M.D. Pa. 2002) (citing *In re Chavis,* 207 B.R. 845 (Bankr. W.D. Pa. 1997) (other citations omitted). "If it is possible to construe an exemption statute in ways that are both favorable and unfavorable to a debtor, then the favorable method should be chosen." *Gaertner v. Claude,* 206 B.R. 374, 377 (Bankr. W.D. Pa. 1997). A party objecting to the amendment of an exemption has the burden of establishing cause for denying the amendment. Fed. R. Bankr. P. 4003(c). Courts are split over the issue of whether a party objecting to an amendment must establish cause by a preponderance of the evidence or by clear and convincing evidence. *Compare In re Yonikus,* 996 F.2d 866, 872 (7th Cir.1993) and *In re Daniels*, 270 B.R. 417, 422 n.2 (Bankr. E.D. Mich. 2001). Like other courts in more recent decisions, I adopt

---

[2]This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This matter is core pursuant to 28 U.S.C. §157(b)(2)(A) and (B). This Opinion constitutes findings of fact and conclusions of law made pursuant to Federal Rule of Bankruptcy Procedure 7052 made applicable to contested matters by Rule 9014.

3

preponderance of the evidence as the appropriate standard of proof. *See Gilman v. Ford (In re Ford)* 492 F.3d 1148, 1154 (10th Cir. 2007); *In re Daniels,* 270 B.R. at 422 n.2.

The Trustee asserts that Walck should not be permitted to exempt the proceeds of her husband's life insurance policy because she was "deliberately dilatory" in filing Amended Schedule C. Although he alleges that her actions were "deliberate," he does not posit how the delay would benefit Walck. He simply asserts that she should not be permitted to amend her schedules after significant steps were taken to close the case. Specifically, the Trustee asserts that having received the TFR Notice stating that their claims would be paid in full, creditors expectations will not be met if Walck is permitted to exempt the insurance proceeds at this juncture in her case.

The Trustee also argues that a prerequisite to an exemption under § 522 (d)(11)(C) is a showing by Walck that the insurance proceeds are reasonably necessary for her future support. Section 522(d)(11)(C) provides that a debtor may exempt her "right to receive, or property that is traceable to . . . a payment under a life insurance contract that insured the life of an individual of whom the debtor was a dependent on the date of such individual's death, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor." 11 U.S.C. § 522(d)(11)(C). According to the Trustee, Walck has adequate income to support herself in the future without the insurance proceeds.

    *A.*    *Delay in filing Amended Schedule C*

The Trustee's first argument is that Walck's amendment is untimely. Rule 1009(a) of the Federal Rules of Bankruptcy Procedure provides that any schedule may be amended "as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). Amendments

4

under Rule 1009 are permitted before case closure unless there is evidence of bad faith by the debtor or if creditors will suffer prejudice. *Osborn v. Durant Bank & Trust Co. (In re Osborn),* 24 F.3d 1199, 1206 (10th Cir. 1994); *Tignor v. Parkinson*, 729 F.2d 977, 979 (4th Cir. 1984); *Bierbach v. Brooks (In re Brooks*), 393 B.R. 80, 88 (Bankr. M.D. Pa. 2008) (citations omitted). Creditors are prejudiced when they suffer an actual economic loss due to the delay in filing the amendment. Actual economic loss must consist of a loss beyond that which would occur in the usual case when any asset is exempted. Prejudice also may arise if creditors would have taken different actions, or asserted other positions, if the exemptions had been claim earlier. A late amendment also can be prejudicial if it impairs a trustee's ability to administer the debtor's estate. *Hannigan v. White (In re White),* 405 F.3d 480, 481-82 (1st Cir. 2005); *Kaelin v. Bassett (In re Kaelin),* 308 F.3d 885, 891 (8th Cir. 2002); *In re Brooks*, 393 B.R. at 88. "Mere delay in filing the amendment, or the fact that an amendment if allowed will result in the exemption being granted, are not sufficient to show prejudice." *In re Talmo,* 185 B.R. 637, 644 (Bankr. S.D. Fla. 1995) *quoted in In re Daniels*, 270 B.R. at 426. "If the parties would have taken different actions or asserted different positions had the exemption been claimed earlier, and the interest of those parties are detrimentally affected by the timing of the amendment, then the prejudice is sufficient to deny amendment." *Id.*

     In this case, there is nothing in the record explaining why Walck delayed in filing the amendments. There is also nothing in the record to establish that Walck knew that the Trustee had submitted his Final Report to the UST for review. However, it is clear that she filed Amended Schedule C and served it on the Trustee four days *before* the notice was sent to creditors regarding payment of their claims. At this point, the UST and the Trustee would have

5

been in the best position to stop the notice from being issued. But even for these parties, with only four days, including an intervening weekend, between the date Amended Schedule C was filed and the date the Final Report was filed, it would have been difficult to prevent the notice from being issued. Although the timing was unfortunate, the issuance of the notice to creditors is insufficient to establish bad faith by Walck as a basis for denying the amendment.

The Trustee further argues that prejudice will result if Walck is permitted to exempt the insurance proceeds because creditors have received notice that their claims will be paid in full. I cannot agree that unmet expectations of payment are the equivalent of prejudice. As defined in the cases cited in *Brooks*, prejudice from a delayed amendment to a bankruptcy schedule occurs only when the amendment causes creditors to suffer "a loss beyond the loss that occurs when any asset is exempted." *In re Brooks*, 393 B.R. at 88. The "loss" connected with the TFR Notice is no different than the loss that creditors would have sustained if the exemption had been claimed the day after Walck's husband died. Therefore, simply receiving notice that a claim will be paid does not establish prejudice.

Prejudice also may occur when a delay in filing an amendment impairs a trustee's ability to administer the debtor's estate. For example, if a trustee has taken affirmative measures to administer an asset in reliance on the original exemption scheme, then an amendment to alter that scheme may be precluded as untimely. Thus, in *Daniels, supra,* the debtors claimed an exemption in a personal injury lawsuit in their original schedules, but they failed to assign an estimate of value to the suit. The trustee objected to the exemption, complaining that without a value estimate, he could not decide whether it would be beneficial to administer the asset. The debtors never responded to the objection, so the trustee proceeded to hire counsel and prosecute

6

the suit, ultimately obtaining a $21,500 settlement. The debtors then sought to exempt the settlement. The court denied the amended exemption as untimely because it would impair the trustee's ability to administer the asset he had effectively created. *In re Daniels*, 270 B.R. at 427.

In this case, the Trustee was not required to undertake any action in order to obtain the life insurance proceeds. Walck disclosed the existence of the insurance policy at the creditors' meeting, the Trustee requested the turnover of the proceeds, and Walck duly delivered them. The only impairment suffered by the Trustee was the time and effort he invested in preparing and filing a Final Report. While this is not insignificant, it insufficient to deny a debtor the liberal right to amend schedules afforded by Rule 1009(a).

    *B.*    *Whether the insurance proceeds are necessary for Walck's support*

Having determined that Walck's amendment to her schedules was timely, I will now address the Trustee's second argument – that the insurance proceeds are not necessary for Walck's support. When a court determines whether insurance proceeds are necessary for a debtor's support under § 522(d)(11)(C), it not necessary to insure that a debtor is able maintain her pre-petition lifestyle. Rather, the court must evaluate whether the funds are reasonably necessary for her current and future support. *In re Collins*, 281 B.R. at 583 (citing *In re Comp,* 134 B.R. 544, 554 (Bankr. M.D. Pa. 1991); *In re Velis,* 123 B.R. 497 (D. N.J. 1991) (other citations omitted). The limitations imposed by Section 522(d)(11)(C) are adopted from provisions of the Uniform Exemption Act. *In re Collins* 281 B.R. at 583 (citing *In re Tooker,* 174 B.R. 33, 35 (Bankr. D. Vt. 1994); *In re Sheridan,* 38 B.R. 52, 57 (Bankr. D. Vt. 1983); *In re Miller,* 33 B.R. 549, 553 (Bankr. D. Minn. 1983)). The Uniform Exemption Act describes the

following eleven factors to be considered when assessing whether insurance proceeds are reasonably necessary for a debtor's support: "(1) debtor's present and anticipated living expenses; (2) debtor's present and anticipated income from all sources; (3) the age of the debtor and his or her dependants; (4) the health of the debtor and his or her dependants; (5) debtor's ability to earn a living; (6) debtor's job skills, education and training; (7) debtor's other assets, including exempt assets; (8) the liquidity of these other assets; (9) debtor's ability to save for retirement; (10) the special needs of the debtor and his or her dependants; and (11) debtor's continuing financial obligations, e.g., alimony or support payments." *In re Collins*, 218 B.R. at 583, (citing *In re Velis,* 123 B.R. at 510; *In re Tooker,* 174 B.R. at 35; *In re Comp,* 134 B.R. at 554; *In re Flygstad,* 56 B.R. 884, 889–890 (Bankr. N.D. Iowa 1986).

At the hearing, the Trustee adduced testimony from Walck that generally supported the amounts stated in her amended schedules of monthly income and expenses.[3] On the date of the hearing, Walck was 66 years of age and was employed as a housekeeper at a nursing home where she earned $1684 per month. She received $1010 per month from Social Security, $99 per month from her late husband's pension, and $300 from her daughter, who resides with her. Her total monthly household income from these three sources was $2608. Walck testified that she enjoys her job at the nursing home and intends to continue working until she is 70 years of age, if her health permits. When she stops working, she will receive Social Security income of $1600 per month.

---

[3] The amended schedules that she filed after the hearing were consistent with her testimony at the hearing.

8

Walck's monthly expenses are reasonable and within the range expected for her household size, geographic location, and income level.[4] The only disproportionate expense is her mortgage which, at $1458 per month, represents 55.9% of her monthly income. At the hearing, Walck testified that Debtors had refinanced their mortgage within the ten years preceding her husband's death and that the term of the mortgage is thirty years. She also testified that if the amended exemption under § 522(d)(11)(c) were allowed, she would use the funds to pay her mortgage for the next seven years.

The Trustee did not challenge Walck's testimony regarding the mortgage or introduce evidence that the expense was not reasonable or necessary under § 522(d)(11)(C). For example, he adduced no evidence as to the availability of appropriate alternative housing for Walck in her locale. Accordingly, although the mortgage expense consumes an inordinate amount of Walck's monthly income, I conclude that this expense is reasonably necessary for her support.

The Trustee succeeded in proving that Walck's actual income exceeded the amount stated on in her schedules by $99.72. He also successfully demonstrated that the monthly payment on a homeowners insurance policy of $61.42 was escrowed with her mortgage payment and should not have been reported separately on her schedule of expenses. Even with these adjustments, Walck's income of $2608 a month is less than her adjusted expenses of $2655.31. I also consider that Walck has attained the age of 67 since the date of the hearing, earns her income through manual labor, and intends to retire when she reaches age 70. When she retires

---

[4] Her specific expenses, other than her mortgage, were as follows: electricity and heating fuel – $198; water and sewer – $38; TV/cable/internet – $99; home maintenance – $20; food – $250; laundry and dry cleaning – $25; medical and dental – $100; transportation – $92; recreation – $10; charitable contributions – $25; life insurance – $229; auto insurance – $110; taxes – $2; water softener – $58.

9

she no longer will earn monthly wages of $1684. This loss will not be offset by the increase in her Social Security payments from $1010 per month to $1600. Thus, as of August 2014, assuming her daughter continues to contribute to Walck's expenses, her total household income will decrease to $1999. Further, there is no reason to believe that her expenses will be reduced in any significant amount.

Applying the factors employed by Judge Thomas in *Collins*, especially Walck's anticipated reduction in income within the next three years, I conclude that Walck is entitled to amend her claim of exemptions to exempt the proceeds of the life insurance policy under § 522(d)(11)(C). Given her anticipated living expenses, her age, her diminishing ability to earn a living by doing manual labor, the unavailability of other assets to meet her needs, and her limited ability to save for retirement at this late date, I find that the proceeds of the insurance policy are necessary for her to meet her basic needs.

### III. Conclusion

For the reasons set forth above, the Trustee's Objection to Walck's Amended Schedule C will be overruled. An appropriate order will follow.

By the Court,

Date: October 11, 2011

Mary D. France
Chief Bankruptcy Judge
(JK)